IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LUKE MYERS,
on behalf of himself and those similarly situated,

      Plaintiff,

v.                                  Case No. 2:23-cv-01096

PAPA TEXAS, LLC; GUILLERMO PERALES;
DOE CORPORATION 1-10; and John Doe 1-10;

      Defendants.

## DEFENDANT PAPA TEXAS, LLC.'S MOTION TO DIMISS AND ENFORCE SETTLEMENT AGREEMENT

COMES NOW, Defendant Papa Texas, LLC ("Papa Texas") (hereinafter referred as "Defendant") and respectfully moves this Court to dismiss this action and enforce the settlement agreement entered into between Defendant and Plaintiff.  In the alternative, Defendant requests the Court compel arbitration and stay this proceeding.  As grounds therefore, Defendant states as follows:

### INTRODUCTION

Defendant franchises and operates Papa John's Pizza stores in Texas and other states, including New Mexico.  Defendant employed Plaintiff, Luke Myers, at one of its New Mexico franchise locations.  On May 18, 2023, Plaintiff filed a Class Action Complaint [Doc. 1].  On July 20, 2023, Defendant filed a Motion to Dismiss and Compel Arbitration or Stay Proceedings Pending Resolution of Arbitration [Doc. 7].  Following the filing of the Motion to Dismiss and Compel Arbitration, counsel for Plaintiff and Defendant entered into discussions, whereby Plaintiff

1

agreed to arbitrate this matter without further briefing on the Motion to Dismiss.  *See* **Exhibit A,** August 2, 2023 email.  On that same day, Plaintiff's counsel stated that

> Also, we are agreeable to exploring the possibility of a resolution in advance of incurring filing fees and other arbitration costs. If your client is interested, we'd ask that you agree to toll the statute of limitation on Mr. Myers claim for 30 days and provide us with his payroll data (miles driven, reimbursements paid, and the hours worked/wage rates dating back three years from when his Complaint was filed). If you'd like to discuss further, please let me know.

**Exhibit A.**

On August 3, 2023, Plaintiff filed a Joint Stipulation of Dismissal [Doc. 10].  The parties agreed to toll the arbitration deadlines for 21 days in an attempt to resolve the dispute and Defendant agreed to provide to Plaintiff, data reflecting Plaintiff's miles driven, wages and wage rates, hours worked at each wage rate, and vehicle expense reimbursements.  The Parties entered into negotiations, but did not agree on a settlement within the 21-day time period.  Consequently, Plaintiff, on September 11, 2023, submitted a Demand for Arbitration through the Judicial Workplace Arbitration.  **Exhibit B**.  Upon learning the case was to be arbitrated through the American Arbitration Association ("AAA"), Plaintiff resubmitted the demand on September 12, 2023.  Defendant requested an extension of time to file its response to the demand for arbitration from AAA in order to continue to negotiate a resolution with Plaintiff.  AAA agreed and extended the deadline.  Prior to the extension of that deadline, the parties entered into a settlement agreement.  On October 20, 2023, an agreement was reached regarding the amount of the settlement.  **Exhibit C**.  However, the language in Plaintiff's proposed release contained incorrect information as to payment.  **Exhibit D**.  On November 6, 2023, Plaintiff sent a signed Settlement Agreement, that continued to contain incorrect information. **Exhibit D**.  On November 20, 2023, Plaintiff sent a copy of the revised Settlement Agreement in word version and Defendant made changes to the document correctly reflecting the agreement, namely that Defendant would provide

two checks – one made payable directly to the law firm and the other made payable directly to Plaintiff.  **Exhibit E**.  However, Plaintiff refused to sign the correct agreement.  On December 8, 2023, Plaintiff again filed a Class Action Complaint, now pending under Cause No. 2:23-cv-01096-KRS-JHR, and on December 19, 2023, filed a Motion to Certify Class.

**ARGUMENT**

**I.**    **The Court Should Enforce the Settlement Between Luke Myers and Papa Texas.**

New Mexico has a strong policy of favoring settlement agreements. *Purple up LLC v. Sherman & Sherman, P.C.*, 2014 N.M. App. Unpub. LEXIS 336 (citing *Builders Contract Interiors, Inc. v. Hi-Lo Indus., Inc.*, 2006-NMCA-053, ¶ 7, 139 N.M. 508, 134 P.3d 795; *see also Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc.*, 1988-NMSC-010, ¶ 3, 106 N.M. 705, 749 P.2d 90 ("It is the policy of the law and of the State of New Mexico to favor settlement agreements."). Consistent with this policy, "this Court generally enforces settlement agreements." *Montano v. N.M. Real Estate Appraiser's Bd.,* 2009-NMCA-009, ¶ 12, 145 N.M. 494, 200 P.3d 544.

The parties entered into a settlement agreement via telephone and email.  Plaintiff sent a signed agreement to Defendant to execute; however, that agreement did not correctly memorialize the agreement entered into, namely that Defendant would provide payment with two checks, not three.  Defendant asked for a Word version of the agreement, which was provided by Plaintiff and Defendant made minor changes.  Plaintiff then refused to honor the agreement.  The Court should enforce the settlement agreement between the parties.

**II.**    **In the Alternative, the Court Should Compel Arbitration of the Class Action Complaint filed 12/08/2023.**

Plaintiff, along with all Defendant's employees nationwide, agreed to arbitrate employment disputes pursuant to the Mutual Agreement to Arbitrate Claims ("Arbitration Agreement" or

"Agreement") included in the employee hiring and onboarding process.  In this action, Plaintiff and "Putative Class" allege that they have not been compensated as required by the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA"). 29 U.S.C. § 201, *et seq.*; N.M. Stat. Ann. § 50.4.21, *et. seq.*  All of Plaintiff's claims, and all of the alleged class claims, arise solely from Plaintiff's employment with Defendant and fall squarely within the scope of the valid Arbitration Agreement between all employees, including Plaintiff, and Defendant. Defendant seeks to enforce the Arbitration Agreement that Plaintiff and Putative Class members agreed to and compel Plaintiff and Putative Class to arbitrate all claims raised in the Class Action Complaint.

When a court is satisfied that both parties agreed to arbitrate the claims, based upon signing of the arbitration agreement, then a district court must grant the motion to compel arbitration. 9 U.S.C. §§ 3, 4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241 (1985) ("the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). The United States Supreme Court has held that "courts must rigorously enforce arbitration agreements according to their terms…and the rules under which that arbitration will be conducted." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 223, 133 S.Ct. 2304, 2309 (2013) (internal quotations and citations omitted). The Supreme Court has stated that there is "an emphatic federal policy in favor of arbitral dispute resolutions." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533, 132 S. Ct. 1201, 1203 (2012) (per curium) (internal quotations and citations omitted). The purpose of the FAA is "ensur[e] that private arbitrations are enforced." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1159 (9th Cir.

2013) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 131 S. Ct. 1740, 1748 (2011)).

**A.**  **Plaintiff's Employment with Papa Texas and the Mutual Agreement to Arbitrate Claims.**

Plaintiff worked as a delivery driver at the Papa John's store located at 1701 S. Solano Dr. in Las Cruces, New Mexico from December 20, 2021, to June 2022.  He was later rehired to work as a delivery driver again at the same Papa John's location in January 2023.  Plaintiff continues to work at the Papa John's store in Las Cruces, New Mexico.

As part of the employee hiring and onboarding process, Papa Texas employees and their managers receive, review, and sign the "Mutual Agreement to Arbitrate Claims" ("Arbitration Agreement" or "Agreement").  *See* **Exhibit A, [Doc 7-1] & Exhibit B [Doc 7-2] Arbitration Agreement.**  The Arbitration Agreement is a separate document from the rest of the new employee onboarding materials, and it encourages all employees to read and review the agreement carefully. Each member of the Putative Class received, reviewed, and agreed to the Arbitration Agreement on the date that he or she was hired and completed the rest of the necessary onboarding paperwork. Finally, the terms of the Arbitration Agreement are clear and unambiguous.

Plaintiff Luke Myers reviewed, agreed to, and signed the Arbitration Agreement twice – once for each time he was hired.  Plaintiff signed the Agreement initially on December 20, 2021, (**Exhibit A**) and again on January 9, 2023, (**Exhibit B**) when he was re-hired, [Doc 7-1] and [Doc 7-2].  The General Manager at the Las Cruces Papa John's location also signed both agreements.

**B.**  **Terms of the Mutual Agreement to Arbitrate Claims**

1. The Agreement Clearly States Arbitration is Required for all Parties, including Employees and the Employer (identified as Company).

The Agreement text is drafted in a way that is readable and easy for employees to understand.  It contains numbered provisions with bold and underlined headings, and the Agreement emphasizes particularly important provisions:

1. Effective Date

   The effective date of this Mutual Agreement to Arbitrate Claims ("Agreement")
   is stated below. If Employee receives a copy of this Agreement prior to
   commencing work at Company, Employee's commencement of work at
   Company shall constitute acceptance of the terms and conditions of this
   Agreement regardless of whether or not Employee signs this document and shall
   be the Effective Date of this Agreement. For any other Employee, the Effective
   Date of this Agreement shall occur ten (10) calendar days after Employee
   receives notice of the terms and conditions of this Agreement and Employee
   continues to work for Company which shall indicate conclusively that he or she
   accepts the terms and conditions of this Agreement.

   For Employees who commence or continue employment at Company as of their
   respective Effective Date, Company and Employee mutually agree to resolve
   Covered Claims which occur on or after the Effective Date according to the
   terms and conditions of this Agreement.

2. Definitions

   a. **"Company"** means <u>Papa Texas, LLC</u>, and includes all employees,
      officers, directors, agents, owners, representatives, franchisors, affiliated
      or related companies of the entities and/or persons other than Employee
      whose alleged act or omission was the cause of any Covered Claim.

   b. **"Employee"** means a person who is employed by Company. The term
      also includes an Employee's spouse, children, parents, estate, successors
      and assigns.

   c. **"Course and Scope of Employment"** means an activity of any kind or
      character that has to do with and originates in the work, business, trade, or
      profession of Company and that is performed by Employee while engaged
      in or about the furtherance of the affairs or business of Company. The term
      includes an event or activity conducted on the premises of Company or at
      other locations.

   d. **"Covered Claim"** or **"Covered Claims"** means any and all claims
      included or described in Paragraph 5(a) of this Agreement.

3. Federal Arbitration Act Applies

   Company is engaged in "commerce" as that term is defined in Section 1 of the
   Federal Arbitration Act ("FAA"). The FAA governs all aspects of this
   Agreement.

4. ARBITRATION IS MANDATORY FOR EMPLOYEES

COVERED CLAIMS SHALL BE EXCLUSIVELY RESOLVED BY BINDING ARBITRATION. WHILE BOTH EMPLOYEE AND COMPANY RETAIN ALL SUSTANTIVE LEGAL RIGHTS AND REMEDIES UNDER THIS AGREEMENT, EMPLOYEE AND COMPANY ARE BOTH WAIVING ALL RIGHTS WHICH EITHER MAY HAVE WITH REGARD TO TRIAL, WHETHER JURY OR NON-JURY, IN STATE OR FEDERAL COURT FOR ANY COVERED CLAIM. EMPLOYEE AND COMPANY ALSO AGREE TO WAIVE ANY RIGHT THEY MAY HAVE TO CLASS ARBITRATION OR CONSOLIDATION OF INDIVIDUAL ARBITRATIONS FOR ANY AND ALL COVERED CLAIMS. THE DECISION OF THE ARBITRATION JUDGE OR FIRM IS FINAL AND BINDING ON ALL OF THE PARTIES. THERE IS NO RIGHT TO APPEAL ON THE MERITS OF THE DISPUTE TO EITHER A STATE OR FEDERAL COURT.

**Exhibit A & Exhibit B**.

> 2. <u>The Agreement Clearly Identifies the Scope of Arbitrable Claims.</u>

Immediately after the provision stating that arbitration is mandatory for all employees, the Agreement defines the scope of the Arbitration Agreement and arbitrable claims. It outlines the claims that are covered and not covered by the Agreement. Provision 5(a)(ii) states that the Agreement is mutual and covers claims that either the company or the employee may have which arise from:

> Any and all claims or controversies concerning or relating to Employee's application with, employment with or termination from, the Company, including but not limited to, claims for standard wages, overtime wages, or other compensation or benefits due; claims for breach of any contract, express or implied; employment related tort claims (including claims for negligence, gross negligence, and intentional harm); claims for discrimination or harassment of any kind – including without limitation harassment or discrimination based on gender, race, nationality, ethnicity, disability, religion, age, and all other categories or classes of protection under the federal or state law' and/or claims for violation of any federal or state statute or common law or regulation.

**Exhibit A & Exhibit B**

The Arbitration Agreement stipulates to the arbitration procedure, including assignment of the arbitration association, where the arbitration will take place, who will pay the arbitrator's fees,

discovery and pre-arbitration motions governance, remedies, and defenses, and that there will be a written arbitration award. **Exhibit A & Exhibit B**.

   3. <u>The Agreement Expressly Prohibits Class Actions.</u>

   As provided above, parties to the Agreement expressly waive the right to a class arbitration or consolidation of individual arbitrations. Again, this provision of the Agreement is in all capital, bolded letters to ensure that parties are informed. The relevant provision states, "**EMPLOYEE AND COMPANY ALSO AGREE TO WAIVE ANY RIGHT THEY MAY HAVE TO CLASS ARBITRATION OR CONSOLIDATION OF INDIVIDUAL ARBITRATIONS FOR ANY AND ALL COVERED CLAIMS**." **Exhibit A & Exhibit B** (emphasis in original). Putative class members agreed to this provision upon hiring.

   Despite agreeing to arbitrate, Plaintiff and the Putative class filed a complaint in this Court on May 18, 2023, alleging that Defendant did not compensate them in accordance with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201, *et seq.*, and the New Mexico Minimum Wage Act ("NMMWA"), NMSA 1978, §50-4-21 *et seq. See* Complaint, generally. As explained fully below, Plaintiff and Putative Class's claims are governed by the FAA and the Mutual Agreement to Arbitrate Claims which all parties signed; therefore, the dispute must be resolved through arbitration.

   The FAA governs written arbitration provisions in contracts involving commerce and provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under Section 4 of the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court […] for an order directing that such arbitration proceed in the manner provided for in such

agreement." 9 U.S.C. § 4.  If a court determines the cause of action is covered by an arbitration

clause, it must stay the proceedings until the arbitration process is complete.  9 U.S.C. § 3.  This

Court should compel arbitration of Plaintiff's and Putative Class's claims because the Agreement

explicitly requires the threshold question of arbitrability to be decided by an arbitrator.  Even if the

Court decides to instead make the initial arbitrability determination itself, the claims must

nonetheless be compelled to arbitration because Plaintiff and Putative Class entered into a valid

arbitration agreement under state and federal law, and because all the claims fall within the scope

of the Agreement.  This Court should dismiss the Complaint as to Defendant, or in the alternative,

stay this litigation pending full resolution of the claims through arbitration.

     **C.**   **The Arbitration Agreement Delegates the Initial Question of Arbitrability to the Arbitrator, Not This Court.**

Under the terms of the Agreement, even the initial question of whether the parties to this

dispute agreed to arbitrate has been delegated to the arbitrator, so the Court must compel arbitration

for that reason alone.  *See AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986) ("the

question of whether the parties agreed to arbitrate is to be decided by the arbitrator, not the court").

Furthermore, it is well-established that any doubts regarding arbitrability should be resolved in

favor of arbitration, in light of the strong federal policy in favor of arbitration.  *See Moses H. Cone*

*Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Mitsubishi Motors Corp. v. Soler*

*Chrysler-Plymoth, Inc.*, 473 U.S. 614, 626 (1985).

In Paragraph Number 5 of the Mutual Agreement to Arbitrate Claims, under the heading

"Other Scope of Arbitration Provisions," Plaintiff and Putative Class agreed that "[t]he question

of whether any particular claim is a Covered Claim under the terms of this Agreement shall be

arbitrated pursuant to the procedures set forth in this agreement."  **Exhibit A & Exhibit B.**  This

provision unmistakably delegates the threshold question of arbitrability to the arbitrator instead of

this Court.  In accordance with the previous agreement of the parties, this Court must compel even the threshold question of arbitrability of Plaintiff and Putative Class's claims to arbitration.

###### D. **Plaintiff and Putative Class Agreed that the Mutual Agreement to Arbitrate Claims Is Governed by the Federal Arbitration Act.**

Even if the Court undertakes the threshold issue of arbitrability, the Court must nonetheless compel arbitration of the claims alleged by Plaintiff and Putative Class in the Complaint because Plaintiff and Putative Class expressly agreed that the Arbitration Agreement is governed by the FAA.  In Paragraph Number 3, titled "Federal Arbitration Act Applies," Plaintiff, Putative Class, and Defendant agreed that "Company is engaged in 'commerce' as that term is defined in Section 1 of the Federal Arbitration Act ('FAA').  The FAA governs all aspects of this agreement." **Exhibit A & Exhibit B.**  This provision leaves no doubt that the parties agreed and intended that the FAA govern their Mutual Agreement to Arbitrate Claims.

###### E. **Federal and State Law Require that the FAA Govern the Mutual Agreement to Arbitrate Claims.**

Even if the Agreement did not include the above provision, the FAA would govern.  When determining whether the FAA applies to an arbitration agreement, courts consider two main issues: (1) whether there is a valid agreement between the parties to arbitrate; and (2) whether the dispute in question falls within the scope of the arbitration agreement.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997); *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1189 (D. N.M. 2018).  Here, because both questions are answered affirmatively, the Court should compel Plaintiff and Putative Class's claims to arbitration.

######## 1. The Arbitration Agreement Is Valid and Enforceable Against Plaintiff and Putative Class.

Under Section 2 of the FAA, agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section is "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Perry v. Thomas*, 482 U.S. 483, 489 (1987). In deciding whether there is an enforceable agreement to arbitrate, "courts generally […] should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 994 (1995). In New Mexico, legally enforceable contracts must be supported by an offer, an acceptance, consideration, and mutual assent of the parties. *See Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC 029, 121 N.M. 728, 918 P.2d 7, 10 (N.M. 1996) (quoting *Hartbarger v. Frank Paxton Co.*, 1993-NMSC 029, 115 N.M. 665, 857 P.2d 776, 780 (N.M. 1993)).

Here, Defendant offered the contract including the arbitration agreement to Plaintiff and each member of the Putative Class. Plaintiff and each member of the Putative Class accepted the offer and began working for Defendant. New Mexico federal courts have held that an offer of or continued at-will employment, as well as the mutual obligation to arbitrate, suffice as consideration for an enforceable arbitration agreement, as is present here. *See Guarriello v. Asani*, No. 1:19-cv-01184-WJ-CG, 2020 U.S. Dist. LEXIS 240805, at *15 (D. N.M. Dec. 21, 2020); *Parrish v. Valero Retail Holdings, Inc.*, 727 F. Supp. 2d 1266, 1269 (D. N.M. 2010). Moreover, the parties explicitly agreed in Paragraph 7 titled "Consideration," that "each party's mutual promise to resolve claims and controversies by arbitration in accordance with the provisions of this Agreement constitutes consideration for this Agreement." **Exhibit A & Exhibit B.** This paragraph also provides that the "Employee's continued employment with Company after receiving notice of the institution of the

Agreement will also constitute consideration for this agreement." *Id*. Finally, the parties' mutual assent is evidenced by the electronic signature of the Plaintiff or each member of the Putative Class and that employee's manager and the bargained-for exchange on both sides. The presence of an offer, acceptance, consideration, and mutual assent of the parties renders the Mutual Agreement to Arbitrate Claims an enforceable contract.

2. <u>Plaintiff and Putative Class's Claims Are Covered Because They Are Within the Scope of the Arbitration Agreement.</u>

"There is a presumption of arbitrability in the sense that 'an order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986). The presumption is "particularly applicable" where the scope of the arbitration clause is broad. *Id*. "Doubts should be resolved in favor of coverage." *Id*.

Plaintiff and Putative Class's claims fall squarely within the scope of the Arbitration Agreement. First, the Agreement was in effect at all relevant times for claims alleged in Plaintiff and Putative Class's Complaint. Paragraph 1 provides:

1. Effective Date
The effective date of this Mutual Agreement to Arbitrate Claims ("Agreement") is stated below. If Employee receives a copy of this agreement prior to commencing work at Company, Employee's commencement of work at company shall constitute acceptance of the terms and conditions of this Agreement regardless of whether or not Employee signs this document and shall be the Effective Date of this Agreement. For any other Employee, the Effective Date of this Agreement shall occur ten (10) calendar days after Employee receives notices of the terms and conditions of this Agreement and Employee Continues to work for Company which shall indicate conclusively that he or she accepts the terms and conditions of this Agreement. For Employees who commence or continue employment at Company as of their respective Effective Date, Company and Employee mutually agree to resolve Covered Claims which occur on or after the Effective Date according to the terms and conditions of this Agreement.

**Exhibit A**.

The parties also agreed that the Agreement survives the employer-employee relationship, and that it "commences on the Effective Date and applies to all Covered Claims which occurred on or after the Effective Date." **Exhibit A Exhibit B**. The Mutual Agreement to Arbitrate Claims was in effect at all times that the alleged claims occurred because Plaintiff and Putative Class's alleged claims all occurred while Defendant employed them. The Agreement also covers any potential claims made by Putative Class members who Defendant no longer employs.

Second, each of Plaintiff's and Putative Class's claims are "Covered Claims" as defined and agreed to in the Mutual Agreement to Arbitrate Claims. The Agreement covers "any and all claims or controversies concerning or relating to…claims for standard wages, overtime wages, or other compensation or benefits due." **Exhibit A & Exhibit B**. Plaintiff and Putative Class's complaint alleges that Defendant failed to pay minimum and overtime wages in violation of the FLSA and the NMMWA, and that Defendant made unlawful deductions from their wages and paid them in an untimely manner in violation of New Mexico law. *See* Complaint. All of the claims concern or relate to a claim for standard wages, overtime wages, or other compensation or benefits due, arising solely out of Plaintiff's and Putative Class members employment with Defendant, thus, falling squarely into the agreed upon scope of the parties' Arbitration Agreement. As such, all of Plaintiff's and Putative Class's claims are subject to arbitration and should be compelled to arbitration accordingly.

**F.  <u>This Action Should be Dismissed in its Entirety or Stayed Upon the Filing of This Motion Until the Resolution of the Arbitration.</u>**

The Court should enter an Order compelling Plaintiff and Putative Class to submit their claims to arbitration as they agreed to in the Mutual Agreement to Arbitrate Claims. This Court should also dismiss this action as to Defendant because Defendant is also a party to the Mutual

Agreement to Arbitrate Claims and has agreed to arbitrate any disputes with its employees instead of filing claims in court.  In the alternative, the Court should enter an Order compelling Plaintiff and Putative Class to submit their claims to arbitration and staying the action pending full resolution through arbitration in order to preserve the resources of this Court and all litigants. Section 3 of the FAA requires the Court, upon application of a party, to stay any action involving arbitrable issues until arbitration is complete:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).  Both the FAA and the text of the Agreement itself mandate that Plaintiff and Putative Class's claims be submitted to arbitration and the proceedings stayed pending resolution through arbitration, if not dismissed.

Plaintiff and Defendant, and Putative Class members and Defendant mutually agreed to resolve disputes between them through arbitration.  As demonstrated, the parties' Mutual Agreement to Arbitrate Claims is valid and enforceable, and Plaintiff and Putative Class's claims fall within the Agreement's scope.

<u>**CONCLUSION**</u>

Based on the foregoing, Defendant Papa Texas, LLC respectfully requests that the Court grant its Motion to Dismiss and Enforce the Settlement Agreement or in the Alternative Compel Arbitration and Stay Proceedings, order Plaintiff and Putative Class to submit their claims to arbitration as directed in the parties' Mutual Agreement to Arbitrate Claims and grant such other relief as the Court deems just and proper.

GUEBERT GENTILE & PIAZZA, P.C.


By ___/s/ Elizabeth M. Piazza_____
        Robert F. Gentile
        Elizabeth M. Piazza
        P.O. Box 93880
        Albuquerque, NM 87199
        (505) 823-2300
        rgentile@guebertlaw.com
        epiazza@guebertlaw.com
        *Attorney for Defendant Papa Texas, LLC*

This is to certify that on this 18th day of January 2024, the foregoing Defendant Papa Texas, LLC.'s Motion to Dismiss and Enforce Settlement Agreement or in the Alternative Compel Arbitration and Stay Proceedings Pending Resolution of Arbitration was filed electronically through the CM/ECF system, which caused the following to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Christopher Moody
MOODY & STANFORD, P.C.
4169 Montgomery Blvd., NE
Albuquerque, NM 87109
(505) 944-0033
moody@nmlaborlaw.com

-AND-

Andrew R. Biller
Andrew P. Kimble
Emily Hubbard
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
(513) 202-0710
abiller@billerkimble.com
akimble@billerkimble.com
ehubbard@billerkimble.com

*Counsel for Plaintiff and the putative class*

*/s/ Elizabeth M. Piazza*